991 So.2d 13 (2008)
George William WOLFE II
v.
Jessica Rose HANSON.
No. 2006 CU 1434R.
Court of Appeal of Louisiana, First Circuit.
May 2, 2008.
Writ Denied June 27, 2008.
*14 Harley M. Brown, Baton Rouge, LA, for Plaintiff/Appellee, George William Wolfe, II.
Mark D. Plaisance, Baker, LA, Harry Ezim, Baton Rouge, LA for Defendant/Appellant, Jessica Rose Hanson.
Before GUIDRY, PETTIGREW, DOWNING, McCLENDON, and HUGHES, JJ.
*15 HUGHES, J.
This is an appeal by Jessica Rose Hanson of a January 10, 2006 judgment of the 23rd Judicial District Court. The judgment altered a custody arrangement pursuant to a previous consent judgment between Ms. Hanson and George William Wolfe II regarding their son, Nathan, by (1) removing Ms. Hanson as domiciliary parent and (2) increasing Mr. Wolfe's time for physical custody of Nathan. This court amended the judgment to reinstate Ms. Hanson as the domiciliary parent and affirmed the judgment as amended. On June 15, 2007 the Louisiana Supreme Court vacated that ruling and remanded the case to this court with instructions to order the trial court to provide explicit reasons for its decision to remove Ms. Hanson as domiciliary parent, thereby not designating a domiciliary parent as required by La. R.S. 9:335. Having complied with those instructions, for the reasons that follow, we uphold our earlier decision. The January 10, 2006 judgment is amended to reinstate Jessica Hanson's status as domiciliary parent. The judgment is affirmed as amended.

I. FACTS AND PROCEDURAL HISTORY
Nathan Wolfe was born on September 10, 2003. His parents, Jessica Rose Hanson and George William Wolfe II, lived together but were not married. As of May 2004 the parties had separated and Mr. Wolfe filed a petition to acknowledge his paternity and establish a joint custody arrangement with Ms. Hanson as the domiciliary parent.[1] On July 2, 2004 Ms. Hanson and Mr. Wolfe entered into a consent judgment providing for joint custody of Nathan. Ms. Hanson was named domiciliary parent and Mr. Wolfe received physical custody of Nathan "every other four (4) days that he is off" according to his set work schedule.
The parties briefly reconciled and in fact married on January 27, 2005 before separating for good in April of 2005, when Ms. Hanson moved with Nathan from the marital residence in Ascension Parish to St. Landry Parish, where her mother lives. The parties' relationship deteriorated to the point where Ms. Hanson sought a protective order against Mr. Wolfe; that matter came before a hearing officer in St. Landry Parish on May 27, 2005. The hearing officer granted a protective order in favor of Ms. Hanson for a three-month period, naming her as domiciliary parent and granting Mr. Hanson visitation "during the four days that he is off from work."
On June 2, 2005, while the terms of the St. Landry protective order were in effect, Mr. Wolfe filed a motion in the original Ascension Parish action entitled "Motion to Modify Custody and Reset Child Support." In his request for modification, Mr. Wolfe did not argue that the prior consent judgment was no longer effective due to the marriage of the parties.[2] Rather, he argued that Ms. Hanson's relocation to St. Landry Parish and Nathan's older age constituted material changes in circumstances that justified a more equally shared physical custody arrangement. Mr. Hanson did not address or pray to modify Ms. Hanson's status as domiciliary parent.
The matter was set for hearing on July 29, 2005 in Ascension Parish in the original *16 pre-marriage proceeding, and continued pending evaluation and a report by a court-appointed licensed clinical social worker. The report was completed on October 24, 2005. In a thorough and detailed report, Al Robelot and Jamie LeBourgeois, the licensed clinical social workers appointed by the court, both recommended that the mother be maintained as domiciliary parent. The matter was heard on October 28, 2005, In a judgment signed on January 10, 2006 the trial court modified the custody arrangement such that Mr. Wolfe and Ms. Hanson would have "joint custody of the child, but neither parent shall be named domiciliary parent." The trial court also increased Mr. Wolfe's physical custody of Nathan from every other four-day period to every four-day period off from his work schedule.[3]
In its written reasons after remand by the supreme court, the trial court stated that "[t]he parties repeatedly have demonstrated their unwillingness to communicate with each other about their child." Further, the trial court stated that it was of the belief that if one of the parties were designated domiciliary parent of Nathan, the "winner/loser dynamic would continue to exist and be played out between the parties to the detriment of the [child]." The court further stated that "by keeping them [the parents] on equal standing, the Court hopes to keep the parties focused on the best interest of their child."
Ms. Hanson maintains her appeal from that judgment. She alleges that the trial court erred in (1) removing her as Nathan's domiciliary parent and (2) ordering the parties to exchange Nathan every four days.

II. LAW AND DISCUSSION

A. Designation of Joint Custody without a Domiciliary Parent
Louisiana Revised Statutes 9:335, which guides courts in determining joint custody arrangements, provides the following:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(3) The domiciliary parent shall have authority to make all decisions affecting *17 the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.
To decide this matter, we must consider the interplay of the three sections of this statute. Section (B) clearly expresses a legislative preference and intent that courts deciding joint custody matters select a parent with whom the child is to primarily reside: "In a decree of joint custody the court shall designate a domiciliary parent[.]" (emphasis added) The domiciliary parent has legal authority "to make all decisions affecting the child" subject to judicial review "upon motion of the other parent." The statute provides for only two exceptional circumstances in which a court may decline to name a domiciliary parent in a joint custody context: when (1) "there is an implementation order to the contrary" or (2) "for other good cause shown." As the court in this matter declined to name a domiciliary parent, we must inquire whether the facts of this case support either of the statutory exceptions.
An "implementation order to the contrary" must meet the requirements set forth in LSA-R.S. 9:335(A) by specifically allocating (1) physical custody times for each parent and (2) "the legal authority and responsibility of the parents." For example, one parent might be the better choice to assume primary responsibility for the child's education and the other parent might be the better choice to assume primary responsibility for the child's healthcare. Thus, a court's joint custody decree that does not designate a domiciliary parent yet does "allocate the legal authority and responsibility of the parents" as suggested above would be a joint implementation order sufficient to overcome the failure to name a domiciliary parent.
If, however, the joint custody decree neither designates a domiciliary parent nor provides otherwise in an implementation order that allocates the legal authority and responsibility of the parents, the second potential exception of section (B)(1) must be met: "good cause" must be shown for the court's decision not to assign a domiciliary parent. This is echoed by section (A)(1), which requires the court to render a joint custody implementation order "except for good cause shown."
The statute does not define "good cause" but some guidance is provided in Walker v. Walker, 38,982, p. 8 (La.App. 2 Cir. 8/18/04), 880 So.2d 956, 961-62. There, a trial court's given reasons for not naming a domiciliary parent amounted to an "open-ended conclusion" based on the trial court's "comfort level" that did not reach the standard of "good cause shown." Id. Good cause should be supported by facts in the record. If good cause is shown, then section (C) of the statute applies and the custody arrangement will operate under "the provisions of Title VII of Book I of the Civil Code."
After a thorough review of the record in this matter, we conclude that the facts herein do not present a joint custody arrangement conforming to the requirements of Louisiana Revised Statutes 9:335. First, it is clear that the trial court opted not to assign a domiciliary parent: "neither parent shall be named domiciliary *18 parent." Thus, one of the two exceptions must apply: either a valid "implementation order to the contrary" must have been provided by the trial court or "good cause" not to name a domiciliary parent must have been shown.
The written reasons for judgment of the trial court make clear that there is no implementation order in this matter, but that the trial court is of the belief that good cause exists to remove Jessica Hanson's status as domiciliary parent and not name a domiciliary parent in this case. Specifically, the trial court states that it believes that the designation of one parent as domiciliary parent would "cause a perception of a winner and a loser." However, the trial court also notes that "the parties repeatedly have demonstrated their unwillingness to communicate with each other about their child" and further notes that said refusal has led to "heated arguments and police involvement on several occasions."
Along these lines, the second circuit has found that "a court's determination that the parties are unable to communicate effectively with each other regarding issues concerning the child may constitute good cause for refusing to designate a domiciliary parent." Brewer v. Brewer, 39,647, pp. 12-13 (La. App. 2 Cir. 3/2/05), 895 So.2d 745, 752 (citing Walker, 880 So.2d 956) (emphasis added). But the contrary may also be true, in which case dissention between the parents dictates adherence to the statutory norm: "where it is clear that the parents will likely disagree on important decisions about the children, such as recreational activity, school issues and discipline ... a domiciliary parent should have been named. Miller v. Miller, 01-0356, p. 9 (La.App. 3 Cir. 10/31/01), 799 So.2d 753, 759.
We are inclined in the circumstances before us to follow the reasoning of the third circuit rather than that of the second. Mr. Wolfe originally agreed that Ms. Hanson should serve as domiciliary parent and then requested a modification of that consent judgment. Ms. Hanson had been maintained as domiciliary parent pursuant to the St. Landry Parish protective order when the instant litigation was initiated. Ms. Hanson's status as domiciliary parent had been agreed to by Mr. Hanson and subsequently confirmed by courts in Ascension and St. Landry Parishes. It was also recommended by the court-appointed licensed clinical social workers that she be maintained in that position.
This was not the original hearing involving custody of this child. The judgment on appeal cannot be considered in a vacuum. Ms. Hanson had been acting as domiciliary parent since July of 2004. We further note that Mr. Hanson's visitation was in effect doubled.
The trial court both increased Mr. Wolfe's visitation over Ms. Hanson's objection and also removed her as domiciliary parent despite the prior agreement of the parties. If it was the trial court's goal to avoid the perception of a "winner/loser dynamic" by removing Ms. Hanson as domiciliary parent we do not believe that goal was accomplished.
Especially in family court matters, we would prefer to avoid reference to litigants as winners or losers. The goal is justice and the focus must remain on the best interests of the child.
Without a domiciliary parent, an agreement must be reached between Mr. Wolfe and Ms. Hanson on each and every important decision regarding Nathan. The trial court acknowledged that Mr. Wolfe and Ms. Hanson had failed to effectively communicate in the past. In fact, their "heated arguments" have led to police involvement. *19 We do not believe it to be in the best interest of the child to invite confrontation each and every time an important decision is necessitated. Disagreement and conflict between Nathan's parents will lead more likely to deadlock and further strife than to a stable environment for Nathan as he prepares to begin school. It is a reality that immediate decisions will need to be made regarding a child. School and medical emergencies will arise that will require immediate action and the history of these two parents' inability to cooperate evidences the necessity of a domiciliary parent or order allowing one to make the decision.
Mr. Hanson relies on the case of Remson v. Remson, 95-1915, p. 9 (La.App. 1 Cir. 4/4/96), 672 So.2d 409, 412-13, as authority that where naming one or the other parent as domiciliary parent would create a winner/loser dynamic, good cause exists to decline to designate either. But Remson is distinguishable from the facts of this case and cannot be likened to this instance. In Remson the parents had been married the entirety of the lives of their children. After their divorce Ms. Remson filed a petition for custody and child support. Because this was the first custody arrangement, neither parent had ever been designated domiciliary parent before. Further, the court-appointed psychiatrist, Dr. Donald Hoppe, testified that the parties in that case "generally agree[d] on most aspects of the children's upbringing." The Remson court noted that the "circumstances [in that case were] as close to ideal as custody cases come" and further recognized that "[e]ach child custody case must be viewed in light of its own particular set of facts."
The circumstances surrounding this case are not "ideal" as in Remson. In this instance, Jessica Hanson was already named domiciliary parent of Nathan. She acted as the domiciliary parent pursuant to court orders both before and after the marriage. After the divorce, George Wolfe purposely filed for "modification" of the consent judgment in the parish of Ascension under the same suit number, thereby acknowledging the prior arrangement's effectiveness. The trial court acknowledged the parties' inability to communicate rationally and effectively. The court-appointed experts recommended that a domiciliary parent be named. While withholding the designation of domiciliary parent may be an effective tool to punish feuding parents, we cannot allow it to overshadow the best interests of the child. We conclude that there is no good cause for the failure to name a domiciliary parent in this case.
As we noted earlier, Nathan has spent most of his young life in his mother's care and continues to do so. Mr. Wolfe does not dispute that Ms. Hanson is a fit and loving parent. Additionally, practically speaking, once Nathan enters the school system, he will almost certainly require the relative unity, stability, and authority of a domiciliary parent. The statute expressly prefers such an arrangement. The discretion of the trial court in this matter is not unbridled. The statute mandates that a domiciliary parent be named, with two exceptions. We find that the trial court abused its discretion in failing to name a domiciliary parent in this case. Based on the record before us we therefore amend the judgment to name (or continue) Ms. Hanson as domiciliary parent.

B. Change in Physical Custody Time
Ms. Hanson's second assignment of error concerns the trial court's decision to award Mr. Wolfe physical custody of Nathan every four days he is off work in accordance with Mr. Wolfe's work schedule.
*20 In his June 2005 motion, Mr. Wolfe requested a "50/50 equal sharing schedule" pursuant to Louisiana Revised Statutes 9:335(A), which guides courts to arrange equal physical custody "to the extent it is feasible and in the best interest of the child." The trial court granted Mr. Wolfe's motion. Ms. Hanson argues that this arrangement is neither feasible nor in Nathan's best interests, primarily because it disrupts his routine and results in too much traveling for him.
While Ms. Hanson's points have merit, we note that the trial court has great discretion in custody matters and its decisions will not be disturbed unless legal error or abuse of that discretion is shown. Thompson, 532 So.2d at 101. Our review of the record reveals that testimony given by Ms. Hanson at the hearing of this matter did not establish that increased time with Mr. Wolfe had resulted in any significant negative impact on Nathan. Additionally, while the logistics involved in the new exchange arrangement may be inconvenient, the record does not reflect that the arrangement is in any way unfeasible. We conclude that the trial court did not abuse its discretion in increasing Mr. Wolfe's physical custody of Nathan. This portion of the judgment below is affirmed.

CONCLUSION
The judgment of the trial court removing Ms. Hanson as Nathan's domiciliary parent and ordering that neither Mr. Wolfe nor Ms. Hanson be Nathan's designated domiciliary parent is amended to reflect that Ms. Hanson will be reinstated as Nathan's designated domiciliary parent. The trial court's judgment ordering Mr. Wolfe's physical custody of Nathan to be every four days he is off from work in accordance with his four-on, four-off work schedule is affirmed. Each party is to bear their own costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
GUIDRY, J., concurs.
DOWNING and McCLENDON, JJ., dissent and assign reasons.
DOWNING, J., dissenting.
Respectfully, I dissent. The majority here supplants the trial court's determination not to name a domiciliary parent in this matter, disregarding the trial court's sound exercise of discretion. The record demonstrates that the trial court did not abuse its discretion: "Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. The word arbitrary' implies a disregard of evidence or of the proper weight thereof. A conclusion is `capricious' when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence." Burst v. Board of Com'rs, Port of New Orleans, 93-2069, p. 5 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958 (Citations omitted.) And, the decision of the trial court is to be given great weight and overturned only where there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988).
On remand, the trial court fully explained its decision not to name a domiciliary parent. Being fully familiar with all the factors addressed by the majority, after having seen and evaluated the witnesses, the trial court asserted its "firm belief that good cause exists not to name a domiciliary parent in this case." It concluded its written reasons as follows: "By keeping them on equal standing, the Court hopes to keep the parties focused on the best interest of their children rather than on who has the position of authority and control over the other's relationship with Nathan." This seems a reasonable *21 goal, well within the trial court's discretion. There is no indication, as the majority suggests, that the trial court is attempting to punish either parent.
The majority bases part of its opinion on the erroneous conclusion that Ms. Hanson is being removed as domiciliary parent, thus being cast as the "loser" in this matter. Ms. Hanson was not the child's domiciliary parent when the custody matter was decided. When Ms. Hanson and Mr. Wolfe married on January 27, 2005, the stipulated judgment between them entered on July 2, 2004 was extinguished.[1],[2]
*22 The majority dismisses the trial court's reasonable determination to place the parents on equal footing and replaces it with its own. It notes two possible interpretations to parents' inability to communicate. In Brewer v. Brewer, 39,647, pp. 12-13 (La.App. 2 Cir. 3/2/05), 895 So.2d 745, 752, the court concluded that an inability to communicate effectively may constitute good cause for refusing to designate a domiciliary parent. In Miller v. Miller, 01-0356, p. 9 (La.App. 3 Cir. 10/31/01), 799 So.2d 753, 759, the court stated that where parents are likely to disagree on important decisions, a domiciliary parent should be named.
Rather than accepting the trial court's reasonably supported findings, the majority now inclines to become the factfinder. How does the majority know that disagreement and conflict between Nathan's parents will lead more likely to deadlock and further strife? Further, from the record, it is questionable that Ms. Hanson is willing to facilitate a relationship between Nathan and his father. The trial court saw the demeanor of the witnesses and made credibility and factual determinations. This is its function, not the majority's.
We may or may not agree with the trial court, but it did not abuse its discretion in deciding how to promote Nathan's best interest. Its decision is neither arbitrary nor capricious. The trial court's decision may ameliorate the dissension between Ms. Hanson and Mr. Wolfe. They may communicate and cooperate better and keep Nathan's best interest in mind knowing they share fully equal control. The trial court does not abuse its discretion in promoting these goals.
Accordingly, under the appropriate standards, the judgment of the trial court should be affirmed. Barring that, we should remand this matter to the trial court for an evidentiary hearing on domiciliary status or for entry of a joint custody implementation order. But this not an appropriate case for us to substitute our judgment for the trial court's discretion, where the trial court exercised its discretion and found good cause to pointedly decline to name either parent as domiciliary parent.
Accordingly, I dissent from this portion of the decision.
I agree with the majority's determination to affirm the trial court award of physical custody between Mr. Wolfe and Ms. Hanson.
McCLENDON, J., dissenting.
I respectfully dissent from the majority opinion. I do not believe the existence of a "winner/loser dynamic" between two parents is sufficient "good cause" under La. Revised Statute 9:335 to not either name a domiciliary parent or render a joint custody implementation order. An implementation order would allow the court to delineate the legal authority and responsibility of each parent. Further, an equal inability or refusal by two parents to communicate, regarding their child's interest would seem to require a well delineated joint custody implementation plan to avoid further battles and conflicts. However, if said refusal to communicate is unequal, and one parent is more willing to facilitate communication, an appointment of a domiciliary parent may be the better alternative. This choice must be based on the specific facts of each case. Thus, I believe that this matter should be remanded to the trial court for hearing in order to either render a joint custody implementation plan, as set forth in La. Revised Statute 9:335, or to designate *23 a domiciliary parent, but only to the extent that such designation of domiciliary parent is in the best interests of the child. To do neither would create an unacceptable void of parental authority to make critical medical, educational and religious decisions, in a situation where it is certain that the parents would be unable to communicate and make joint choices regarding the child's welfare.
NOTES
[1] Civil Docket No. 77,998, 23rd Judicial District Court, Parish of Ascension.
[2] Neither parent objected to proceeding under the original Ascension Parish docket number despite their subsequent marriage. Under the circumstances of this case we believe the appropriate standard of review to be "abuse of discretion."
[3] The original consent decree granted Mr. Wolfe physical custody of Nathan on every other four days that he is off work. Mr. Wolfe's motion to modify custody requested that his physical custody be increased to "a 50/50 visitation schedule"; this would allow Mr. Wolfe visitation on each of his four-day off periods, in accordance with his four-on, four-off schedule, thus doubling his visitation.
[1] It is undisputed that Ms. Hanson and Mr. Wolfe were married on January 27, 2005, after the birth of their child, Nathan. While it appears that the effect of a marriage on an existing custody decree affecting a child of both parents has never been specifically reported in Louisiana, no one could seriously argue that such custody order could continue to control during the marriage.

First, La. C.C. art. 99, entitled "Family Authority," states: "Spouses mutually assume the moral and material direction of the family, exercise parental authority, and assume the moral and material obligations resulting therefrom." This article is found in Book 1, Title IV, Chapter 3 of the Civil Code, which chapter is entitled, "Incidents and Effects of Marriage." Thus, by operation of law, marriage between parents of a child gives both parents equal rights to parental authority. Once parents marry, they no longer have separate rights to the incidents of custody. Rather, La. C.C. art. 216 provides: "A child remains under the authority of his father and mother until his majority or emancipation, [par.] In case of difference between the parents, the authority of the father prevails." This article is found in Book 1, Title IV, Chapter 5 of the Civil Code, which chapter is entitled, "Of the Duties of Parents Towards Their Legitimate Children, and of the Duties of Legitimate Children Towards Their Parents." (At the time Ms. Hanson and Mr. Wolfe married, La. C.C. art. 198 provided that illegitimate children were legitimated by the subsequent marriage of their father and mother when they formally acknowledged their children, either before or after the marriage. Art. 199 provided that children legitimated by subsequent marriage are legitimate. La. Acts 2005, No. 192, effective June 29, 2005, removed these provisions from the law. But under these provisions, Nathan is the legitimate child of Ms. Hanson and Mr. Wolfe.)
Second, spouses generally may not maintain lawsuits against one another. La. R.S. 9:291 provides: "Spouses may not sue each other except for causes of action pertaining to contracts or arising out of the provisions of Book III, Title VI of the Civil Code [fn omitted]; for restitution of separate property; for divorce or declaration of nullity of the marriage; and for causes of action pertaining to spousal support or the support or custody of a child while the spouses are living separate and apart." Thus, our law does not contemplate granting parental control to one or the other parent while they are domiciled together and the family is intact.
Third, it would be absurd to suggest that a pre-marital custody order survived a marriage such that a named custodial parent could make decisions regarding the child to the exclusion of the other parent or to suggest that while a family is domiciled together that one parent could control physical custody of the child to the exclusion of the other. Such arrangement would be a constant source for marital disharmony and contention.
These circumstances are analogous to a reconciliation between divorcing parents. La. C.C. art. 104 provides that the "cause of action for divorce is extinguished by the reconciliation of the parties." Custody determination in this context is an action incidental to divorce. La. C.C. art. 105. Thus, the court in Walkowiak v. Walkowiak, 32,615, p. 4 n. 2 (La.App. 2 Cir. 12/8/99), 749 So.2d 855, 858 n. 2, observed that the legal effect of reconciliation is to terminate the cause of action for divorce, including any child custody orders. In explaining this principle, the Louisiana Supreme Court in D'Antoni v. Geraci, 224 La. 818, 824, 70 So.2d 883, 885 (La. 1954), noted that once a divorce action is abated by reconciliation, there is no appropriate proceeding pending between the litigants in which a district court could legally entertain a rule for custody.
Under these principles, when Ms. Hanson and Mr. Wolfe married on January 27, 2005, the stipulated judgment between them entered on July 2, 2004 was extinguished.
[2] The protective order issued pursuant to the May 27, 2005 hearing expired under its own terms and is not at issue here, whether or not its provisions regarding the naming of a domiciliary parent was legal. See fn. 1, above.