McCLENDON, J.
In this custody dispute, the mother appeals a trial court's judgment that denied her request for sole custody. She also appeals the trial court's decision to seal the entire record. For the following reasons, we affirm in part and remand.
FACTUAL AND PROCEDURAL HISTORY
Jeffrey M. Ehlinger, Jr. and Sarah Barnett Ehlinger were married in 2001 and had two children together, a daughter born on September 9, 2002, and a son born on March 11, 2005. Mr. Ehlinger filed a petition for divorce in March 2011. On May 17, 2011, after the parties reached an agreement, *421 the trial court signed a consent judgment, granting them joint and shared physical custody of their two minor children, but naming no domiciliary parent. The consent judgment also made provisions for, inter alia, child support, private school expenses, health insurance, and income tax exemptions. The parties were divorced on June 14, 2012. Ms. Ehlinger married Brandon Donahue on June 28, 2012, and they have a son together, born on January 13, 2013.[1]
On January 30, 2015, Mr. Ehlinger filed a "Motion for Sole Custody, Modification of Custodial Schedule, Designation of Mover as Domiciliary Parent and Prohibition on Drug and Alcohol Use."[2] On February 17, 2016, Ms. Donahue filed her own motion for sole custody of the minor children. A three-day trial took place on both motions for sole custody and on Mr. Ehlinger's motion to be named domiciliary parent, and the trial court took the matter under advisement.[3] On February 10, 2017, the trial court rendered its "Judgment on Rule Granting Joint Custody with Incorporated Implementation Order Pursuant to [LSA-] R.S. 9:335" that maintained shared custody equally between the parties, with no domiciliary parent. The trial court sealed its reasons for judgment.
On August 15, 2017, this court issued a Rule to Show Cause Order, stating that the February 10, 2017 judgment appeared "to lack the specificity required to constitute a final, appealable judgment, in that it fails to specifically identify the party or parties in favor of and against whom judgment was rendered." On September 13, 2017, we issued an Interim Order, remanding the case to the trial court for the limited purpose of allowing the parties to seek an amended judgment. On September 27, 2017, the trial court held a hearing and signed an Amended Judgment, which was supplemented into the appellate record.[4]
Ms. Donahue has appealed and assigns as error the trial court's denial of Ms. Donahue's motion for sole custody and to be designated as the domiciliary parent.[5]
*422 She also assigns as error the sealing of the written reasons for judgment and then, in the amended judgment, the sealing of the entire record.[6]
DISCUSSION
In a proceeding for divorce or thereafter, the trial court shall award custody in accordance with the best interest of the child. LSA-C.C. art. 131. Indeed, the best interest of the child is the sole criterion to be met in making a custody award, and the trial court must pursue actively that course of conduct that will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health that are the court's very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. Hodges v. Hodges, 15-0585 (La. 11/23/15), 181 So.3d 700, 702 ; Harrell v. Harrell, 17-0561 (La.App. 1 Cir. 12/5/17), 236 So.3d 704, 709, writ denied, 18-0018 (La. 2/2/18), 235 So.3d 1112. The legislature has mandated that the court look only to the child's interests so that the court can fulfill its obligations to the child. Hodges, 181 So.3d at 702.
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. LSA-C.C. art. 132. In the absence of an agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. Id. ; Hodges, 181 So.3d at 702.
In determining the best interest of the child, the court shall consider all relevant factors, and such factors may include those enumerated in LSA-C.C. art. 134. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Harrell, 236 So.3d at 709-10. Because of the trial court's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. A trial court's determination regarding child custody will not be disturbed absent a clear abuse of discretion. Id.
Additionally, as in most child custody cases, the trial court's determination as to what is in the best interest of the child is based heavily on factual findings. It is well settled that an appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Olivier v. Olivier, 11-0579 (La.App. 1 Cir. 11/9/11), 81 So.3d 22, 26. Further, in cases where the original custody decree is a stipulated judgment, as is the case before us, the party seeking modification must prove (1) that there has been a material change of circumstances since the original *423 custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Tracie F. v. Francisco D., 15-1812 (La. 3/15/16), 188 So.3d 231, 239-40 ; Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So.2d 731, 738.
Hence, the starting point of our analysis is the legislative pronouncement that the courts must first and foremost consider what is in the best interest of the child, with a strong legislative preference for shared custody on an equal basis unless otherwise indicated by the evidence. In the instant case, Ms. Donahue initially argues that the trial court erred in denying her motion for sole custody. Both parties raised a number of complaints and concerns about the other parent's ability to properly parent, and each asserted that they should be granted sole custody of the minor children. The trial court, in its thorough reasons for judgment, stated:
The acts of bad conduct alleged by father and mother against the other are numerous and sometimes colorful. In an attempt at brevity I will only mention here those issues I consider to be the most relevant. Also, I will not delve into a complete detailing of all the accusations of the parties in an attempt to protect their privacy. The family as a whole has been through extensive counseling and psychological examinations by experts.
Based on our review of the record, it is clear that both parents want the best for their children. However, it is also clear that they cannot agree on the most effective way to achieve that goal. The trial court had the benefit of direct observation of the parties and the difficult task of weighing the credibility of the witnesses. The trial court, after hearing and weighing all of the testimony and evidence, including the expert reports, found that neither party sufficiently established that there had been a change in material circumstances warranting a change in custody. The court determined that it was in the best interest of the children to maintain joint custody. We cannot conclude that the trial court abused its discretion in denying Ms. Donahue's request for sole custody.
Ms. Donahue next asserts that the trial court erred in denying her motion to be designated as the children's domiciliary parent. She contends that there is no implementation order, and, therefore, the absence of a named domiciliary parent is reversible error. Ms. Donahue cites the Hodges case in support of her argument.
In response to this assignment of error, Mr. Ehlinger contends that while LSA-R.S. 9:335 sets forth the preference for the designation of a domiciliary parent, the supreme court in Hodges only held that a court cannot designate co-domiciliary parents and that it did not hold that a court is prevented from designating no domiciliary parent. He also maintains that the amended judgment qualifies as an implementation order.
Louisiana Revised Statutes 9:335 governs joint custody arrangements and provides, as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2) (a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
*424 (3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.
Louisiana Revised Statutes 9:336 also provides that "[j]oint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority." Major decisions normally include decisions concerning major surgery or medical treatment, elective surgery, and schools attended, but not the day-to-day decisions involved in rearing a child, e.g., bedtimes, curfews, household chores, and the like. See Griffith v. Latiolais, 10-0754 (La. 10/19/10), 48 So.3d 1058, 1069. Non-major decisions are not subject to judicial review. Id. ; Evans v. Lungrin, 97-541 (La. 2/6/98), 708 So.2d 731, 738.
Thus, according to Subsection B of LSA-R.S. 9:335, the trial court shall designate a domiciliary parent in a decree of joint custody. However, it also provides for two circumstances in which a court may decline to name a domiciliary parent in a joint custody context, that is, when "there is an implementation order to the contrary" or "for other good cause shown." LSA-R.S. 9:335B(1); Wolfe v. Hanson, 06-1434 (La.App. 1 Cir. 5/2/08), 991 So.2d 13, 17, writ denied, 08-1205 (La. 6/27/08), 983 So.2d 1292. See also Hodges, 181 So.3d at 708. An "implementation order to the contrary" must meet the requirements set forth in LSA-R.S. 9:335A by specifically allocating physical custody times for each parent and allocating the legal authority and responsibility of the parents. Wolfe, 991 So.2d at 17. If, however, the joint custody decree neither designates a domiciliary parent nor otherwise provides an implementation order that allocates the legal authority and responsibility of the parents, good cause must be shown for the court's decision not to assign a domiciliary parent. LSA-R.S. 9:335B(1); Wolfe, 991 So.2d at 17.
In other words, while LSA-R.S. 9:335B(1) provides a preference for the designation of a domiciliary parent, a court could choose not to designate a domiciliary parent at all and, instead, allocate authority by means of an implementation order allocating both physical and legal custody. Hodges, 181 So.3d at 708-09. By making available an implementation order, the legislature has given courts great procedural flexibility to craft a custody arrangement on a case-by-case basis that promotes the *425 best interest of the child. Hodges, 181 So.3d at 709.
In Hodges, the parents were designated "co-domiciliary parents," and one of the issues before the court was whether LSA-R.S. 9:335 permitted such a designation. After reviewing the clear language of LSA-R.S. 9:335, the supreme court concluded:
We hold that [LSA-] R.S. 9:335 precludes the designation of "co-domiciliary parents" in a joint custody arrangement. It is unnecessary and contrary to the plain language of [LSA-] R.S. 9:335 to designate both parents as "co-domiciliary parents" in order to allocate parental responsibility. For example, when a court wishes to depart from the default rule that the sole domiciliary parent has superior decision-making authority, a court can make different provisions for decision making within the joint custody implementation order.
Further, we find that [LSA-] R.S. 9:335 does not explicitly require a particular form for the rendition of a joint custody implementation order, and we hold the only mandatory requirements for a joint custody implementation order stated in [LSA-] R.S. 9:335 are: (1) the time periods during which each parent shall have physical custody of the child; and (2) the legal authority and responsibility of the parents.
Hodges, 181 So.3d at 711.
In the case sub judice, the record reflects that Ms. Donahue and Mr. Ehlinger have failed to effectively communicate, and in fact, their heated arguments have resulted in police involvement on at least one occasion. This inability to cooperate has led to continued disagreement and conflict between the parties. The trial court, after hearing and weighing all of the testimony and evidence, declined to name a domiciliary parent. In its written reasons for judgment, the trial court stated: "Following the holdings in the Hodges case the court declines to designate either parent as being domiciliary." The trial court maintained the joint and shared custody arrangement with no domiciliary parent. Based on the record before us, it is clear that the trial court determined that it was in the best interest of the children to have no domiciliary parent. We find no error in this determination.
Accordingly, we must now determine whether the implementation order provided by the trial court was sufficient.[7] The February 10, 2017 judgment first allocated physical custody and then provided:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that while exercising custody each parent shall have full authority to administer medical care, including psychological treatment, as they deem to be in the best interest of the minor child[ren]; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that before implementing any such action above, the parent intending such action shall inform the other parent of their intent to do so via the Family Wizard program; and if the other parent objects they may petition the court for a resolution of the dispute by either formal or informal procedure. Formal procedure is defined as the filing of a Rule to Show Cause. Informal procedure means that both parties, after having filed a rule and having consented to [waiving] service *426 and all delays, may schedule an instanter phone conference with the court for a swift resolution.
Although the judgment specifies the time periods during which each parent is to have physical custody, the judgment fails to adequately allocate the legal authority and responsibility of the parents. See LSA-R.S. 9:335A. The trial court's judgment gives each parent, when exercising custody, the authority to administer medical care, including psychological treatment, as they deem to be in the best interest of the child and provides steps for the resolution of any disputes regarding same,[8] but it does not allocate legal authority and responsibility for other major decisions.
In Hodges , the trial court's judgment awarded joint custody and ordered a physical custody and holiday custody schedule. The judgment also contained provisions for the parents' rights and responsibilities relative to health insurance, medical costs, daycare costs, claiming the minor child for income tax purposes, and the payment of child support. However, the supreme court in Hodges found that the custody judgment did not meet the second requirement of LSA-R.S. 9:335A in that the judgment failed to "allocate the legal authority and responsibility of the parents." While the supreme court did not set forth specifically what responsibilities are mandated to have a valid implementation order, it found that setting forth only custody and financial arrangements was insufficient.
Given that the statute fails to set forth what specific legal authority and responsibility must be allocated, we must examine the legislative intent of LSA-R.S. 9:335. It would appear that the legislature, in requiring an allocation of the legal authority and responsibility regarding the minor children, intended to promote greater harmony between the parents by providing less opportunity for conflict. In order to accomplish this goal, we find that an implementation order should at a minimum allocate the legal authority and responsibility for major decisions, such as medical care, elective surgery, dental or orthodontic care, and school and/or preschool choices. See Griffith, 48 So.3d at 1069.
Considering the above, we find that in this case the trial court did set forth the authority for making medical decisions regarding the minor children, but failed to allocate which parent would be responsible for other major decisions regarding the health, education, and welfare of the minor children. Accordingly, we remand this matter to the trial court for the entry of a joint custody implementation order allocating not only the legal authority and responsibility of the parents regarding health decisions for the minor children, but also the legal authority and responsibility of the parents with regard to other major decisions as previously set forth.
Lastly, Ms. Donahue argues that the trial court erred as a matter of law in sealing the written reasons for judgment, and then, in the amended judgment, sealing the entire record. The Louisiana Constitution has an "open courts" provision which mandates that all courts shall be open. LSA-Const. art. 1, § 22. Additionally, LSA-Const. art. 12, § 3 provides that no person shall be denied the right to observe the deliberations of public bodies and to examine public documents, except in cases established by law. The right of access to public records is to be liberally construed in favor of unrestricted access.
*427 When doubt exists about the right to access certain records, the doubt must be resolved in favor of the public's right to see. A claim of annoyance, embarrassment, oppression, or undue burden or expense is not enough to overcome the public's right of access to public records. In re Kemp, 45,028 (La.App. 2 Cir. 3/3/10), 32 So.3d 1050, 1054, writ denied, 10-0755 (La. 6/25/10), 38 So.3d 338 (citing Copeland v. Copeland, 07-0177 (La. 10/16/07), 966 So.2d 1040 ).
However, the fact that a document is filed in the court record does not necessarily mean that it will be accessible to the public. In commenting on a court's records, the United States Supreme Court has held that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files and that access has been denied where court files might have become a vehicle for improper purposes. The Court declined to identify all the factors to be weighed in determining whether such access is appropriate, but recognized that the discretion as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. Nixon v. Warner Communications, Inc., 435 U.S. 589, 598-99, 98 S.Ct. 1306, 1312-13, 55 L.Ed.2d 570 (1978) ; Copeland, 966 So.2d at 1044.
Louisiana has no specific statute providing for sealing court records. Trial courts exercise this power under general provisions on courts' authority to govern proceedings. Louisiana Code of Civil Procedure article 191 provides that a court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law. Further, LSA-C.C.P. art. 1631A states that the court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done. Copeland, 966 So.2d at 1045.
Even without a statute exempting certain court proceedings and documents from public review, the constitutional right of access is not unlimited. Louisiana Constitution article 1, § 5 provides, in pertinent part, that every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. This provision protects certain documents and information from disclosure. Copeland, 966 So.2d at 1045-46. In the Copeland case, the supreme court recognized that the right to privacy is defined as the right to be let alone and to be free from unnecessary public scrutiny. However, the court has also defined the limits on the right to privacy, reasoning that the right to privacy is not absolute; it is qualified by the rights of others. The right of privacy is also limited by society's right to be informed about legitimate subjects of public interest. The court went on to note that individuals involved in civil litigation may be compelled to give evidence which tends to embarrass them or to produce documents of a confidential nature. Copeland, 966 So.2d at 1046.
In Copeland, the Louisiana Supreme Court recognized a balancing test to be used in analyzing the competing constitutional rights:
Considering the strong constitutional bias in favor of open access by the public to court proceedings, we find the trial court's blanket order sealing the entire record in this case to be overbroad. Although there may be some justification for sealing certain sensitive evidence in a proceeding, the parties have the burden *428 of making a specific showing that their privacy interests outweigh the public's constitutional right of access to the record. The trial court, should it grant such relief, must ensure that its order is narrowly tailored to cause the least interference possible with the right of public access.
Copeland, 966 So.2d at 1047 (citing Copeland v. Copeland, 06-1023 (La. 6/2/06), 930 So.2d 940, 941 ( Copeland I ) ). The court noted that this balancing test properly subjects a request to have the record sealed to the trial court's discretion, which has supervisory power over its own records and files, placing the burden of proof on the parties seeking closure, and balancing the parties' privacy interests against the public's constitutional rights of access to court proceedings and documents.
Copeland was a divorce proceeding where no "custody hearing" was involved and the parties filed a joint motion to seal the record. See Copeland, 966 So.2d at 1041. In this matter, unlike Copeland, a custody hearing was at issue and it was the trial court that sealed the record on its own motion. The trial court, after hearing all of the testimony and reviewing the evidence, initially concluded that it was in the children's best interest to seal the reasons for judgment based on the criteria set forth in the Copeland case. Thereafter, in its amended judgment, the trial court decreed that, again pursuant to the Copeland criteria, the entire record be sealed, "only to be reviewed by express permission of the Court." The trial court, however, gave no reasons or explanation for its decision.
On appeal, Ms. Donahue is requesting for the first time that the record should be unsealed. Because of the procedural posture of this case, Ms. Donahue's request to unseal the record was presented for the first time on appeal. As we are a court of review, we remand the matter to the trial court for a determination of what part of the record, if any, should be sealed, taking into consideration the balancing test set forth by the Louisiana Supreme Court in Copeland.
CONCLUSION
For the above and foregoing reasons, this matter is remanded to the trial court for a modification of the implementation order consistent with this opinion. We also remand the matter to the trial court for a determination of what part of the record, if any, should be sealed. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally between the parties, Jeffrey M. Ehlinger, Jr. and Sarah Barnett Ehlinger Donahue.
AFFIRMED IN PART AND REMANDED.

For ease of reading, we will refer to Sarah Barnett Ehlinger as Ms. Donahue for the remainder of the opinion. We also note that Mr. Donahue and Ms. Donahue were subsequently divorced. See Donahue v. Donahue, 16-0757 (La.App. 1 Cir. 6/2/17), 222 So.3d 249.

At least part of Mr. Ehlinger's motion was based on actions in the Donahue custody matter, wherein Mr. Donahue was granted sole custody of the minor child. Dr. Alicia Pellegrin, who had been appointed to conduct psychological evaluations of Mr. Donahue and Ms. Donahue in that matter, was appointed to conduct an evaluation of the parties and the Ehlinger children in this case. On June 17, 2016, Mr. Ehlinger filed a motion to compel Ms. Donahue to submit to a mental examination pursuant to LSA-C.C.P. art. 1464. Ms. Donahue opposed the motion, and, following a hearing, the trial court granted the motion.

We note that when Ms. Donahue's current attorney enrolled as counsel, he also filed a motion to recuse Judge Dawn Amacker. Judge Amacker voluntarily recused herself, as she does in all cases involving current counsel. Thereafter, the matter was allotted to Judge Mary Devereaux. Ms. Donahue's counsel then filed a motion to recuse Judge Devereaux, alleging bias and prejudice against Ms. Donahue as shown in the Donahue case. Judge Devereaux denied those allegations, but found that a conflict did exist so that the law required her to recuse herself from the present matter. The case was then allotted to Judge Reginald Badeaux.

The amended judgment of September 27, 2017, provided that "unless expressly modified here, all other aspects of the judgment signed February 10, 2017 shall remain unchanged."

While we note that Mr. Ehlinger asserts that Ms. Donahue never asked to be named domiciliary parent in her motion for sole custody, Ms. Donahue maintains that her request to be named domiciliary parent is found in her motion for sole custody, wherein she stated that "[t]he best interest of the parties' children mandates that Ms. Donahue, as their sole custodian, serve, of course, as the domiciliary parent." We find this to be sufficient.

We note that Ms. Donahue also filed a motion for new trial, which was denied as being untimely.

We do not address whether "good cause" existed for not issuing an implementation order as the trial court rendered a "Judgment on Rule Granting Joint Custody with Incorporated Implementation Order," clearly finding that an implementation plan was necessary. See LSA-R.S. 9:335A(1).

We note that the supreme court in Hodges questioned the desirability of giving the parent with whom the child is residing at the time decision-making authority. See Hodges, 181 So.3d at 706. However, this issue is not before us.