873 So.2d 656 (2004)
Robert Patrick ROMANOWSKI
v.
Sherry Lane ROMANOWSKI.
No. 2003 CU 0124.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*657 John N. Samaha, Baton Rouge, for Plaintiff-Appellee Robert Patrick Romanowski.
Brent K. Delee, Baton Rouge, for Defendant-Appellant Sherry Lane Romanowski.
Before: PARRO, McDONALD, and CLAIBORNE,[1] JJ.
PARRO, J.
A mother appeals from a trial court judgment, which designated the minor *658 children's father as the domiciliary parent, awarded her child support based on a finding that she was voluntarily unemployed, and failed to award her interim periodic spousal support. For the following reasons, we amend in part, and as amended, we affirm.

Facts and Procedural History
Sherry Lane Romanowski (Sherry) and Robert P. Romanowski (Robert) married in 1997. Two children were born of this marriage: Mallory on February 3, 1998, and Nicholas on January 27, 1999. Sherry also had two teenage daughters from a prior marriage. After separating, Robert filed a petition for divorce on March 12, 2002, seeking sole custody of the minor children. Sherry responded by filing an answer and reconventional demand in which she sought a divorce under LSA-C.C. art. 102 based on an allegation that the parties had begun living separate and apart on March 1, 2002, and had not reconciled since then. Additionally, she requested custody and visitation in accordance with the Post-Separation Family Violence Relief Act, LSA-R.S. 9:361 et seq., child support, and interim periodic spousal support. Subsequently, Sherry filed a rule for interim child custody, interim child support, and interim periodic spousal support. In her rule, Sherry alleged that she was not required to obtain employment, since she cared for the parties' minor children under the age of five.
In an interlocutory judgment, the parties stipulated that physical custody of the children would be with Sherry during the week and Robert on the weekends. Robert was responsible for payment of day care expenses. The parties reserved the right to litigate any of the issues set forth in the stipulated judgment without having to show a change in circumstances. Approximately three months later, a second stipulated interlocutory judgment was entered allowing the parties to share custody, in the interim, on a week-to-week basis with Robert providing monthly child support of $750 and Sherry taking care of the children for Robert while he worked.
At the trial of this matter on September 6, 2002, the court determined that it was in the best interest of the minor children to continue the shared custody arrangement and named Robert as the domiciliary parent. In determining the amount of child support, the court assigned a monthly income of $1,905 to Sherry, resulting in a monthly award of $381 in her favor. The issue of interim periodic spousal support was before the trial court at this time; however, the judgment is silent on this issue. Sherry appealed, contending that the trial court erred in assigning $1,905 in monthly income to her for the purpose of calculating child support, since she was at home caring for the parties' three and four-year-old children, in designating Robert as the domiciliary parent, and in failing to order interim periodic spousal support.

Domiciliary Parent Designation
In the absence of an agreement, the court shall award custody to the parents jointly. LSA-C.C. art. 132. To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. LSA-R.S. 9:335(A)(2)(b). In a decree of joint custody, the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown. LSA-R.S. 9:335(B)(1).
The primary consideration in a child custody determination is always the best interest of the child. LSA-C.C. art. 131. LSA-C.C. art. 134 enumerates the following 12 nonexclusive factors that are relevant in determining the best interest of the child:

*659 (1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The best interest of the child test under LSA-C.C. arts. 131 and 134 is a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. Street v. May, 35,589 (La.App. 2nd Cir.12/5/01), 803 So.2d 312, 315. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Craft v. Craft, 35,785 (La.App. 2nd Cir.1/23/02), 805 So.2d 1213, 1217.
The trial court is vested with broad discretion in deciding child custody cases. Because of the trial court's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court. A trial court's determination regarding child custody will not be disturbed absent a clear abuse of discretion. Stephens v. Stephens, 02-0402 (La.App. 1st Cir.6/21/02), 822 So.2d 770, 774; Hodnett v. Hodnett, 36,532 (La.App. 2nd Cir.9/18/02), 827 So.2d 1205, 1209.
Sherry argues that the trial court was manifestly erroneous in designating Robert as the domiciliary parent of their two minor children, since the children were in her physical custody the majority of the time after the parties separated, specifically 65 percent of the time. Although the testimony does in fact support her contention, in that she cared for the children while Robert was at work when he had physical custody of the children, such arrangement was not ordered by the judgment that is being appealed and was subject to change at the insistence of either party without court involvement.
Sherry does not otherwise attack the trial court's weighing and balancing of the factors listed in LSA-C.C. art. 134, nor does she contend that the designation of the father is not in the best interest of the children. In reaching its decision to designate Robert as the domiciliary parent, the trial court made numerous factual findings, *660 which included the fact that Sherry's two children from a prior marriage were high school dropouts, with an extensive history in the criminal justice system and drug use/rehabilitation. The evidence disclosed a chaotic relationship between Sherry and these two girls. Based on Sherry's record with these two children, the trial court found that it would be in the children's best interest to have their father named as the domiciliary parent. Given the trial court's opportunity to observe the demeanor of the witnesses, it was in the best position to make determinations as to the credibility of witnesses. Our review on appeal reveals that the trial court carefully evaluated the testimony and made factual findings which are reasonably supported by the record. Furthermore, we cannot find that it abused its discretion or was manifestly erroneous in its decision to designate Robert as the domiciliary parent.

Calculation of Child Support
Child support is a continuous obligation of both parents; children are entitled to share in the current income of both parents and should not be the economic victims of divorce. LSA-R.S. 9:315(A); see LSA-C.C. art. 141. Income means the actual gross income of a party, if the party is employed to full capacity. LSA-R.S. 9:315(C)(6)(a). Income means the potential income of a party, if the party is voluntarily unemployed or underemployed;[2] in such a case, his gross income shall be determined as set forth in LSA-R.S. 9:315.11. LSA-R.S. 9:315(C)(6)(b) and 9:315.2(B). If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is caring for a child of the parties under the age of five years. LSA-R.S. 9:315.11; Walden v. Walden, 00-2911 (La.App. 1st Cir.8/14/02), 835 So.2d 513, 530.
Voluntary unemployment or underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse. Romans v. Romans, 01-587 (La.App. 3rd Cir.10/31/01), 799 So.2d 810, 812; Gould v. Gould, 28,996 (La.App. 2nd Cir.1/24/97), 687 So.2d 685, 693. In virtually every case where a parent's voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating circumstances beyond that parent's control which influenced or necessitated the voluntary change in employment. Hutto v. Kneipp, 627 So.2d 802, 805 (La.App. 2nd Cir.1993).
At the time of their wedding, Sherry was working at McConnell's Furniture Refinishers, Inc. (McConnell's), a business owed by her sister and brother-in-law.[3] She continued at this job until she was eight months pregnant for the couple's first child (approximately the end of December 1997). During the course of her employment with McConnell's, Sherry was allowed to do some work at home. At times, her sister would drop off chairs at Sherry's home for re-covering and/or refurbishing. Once she ceased working on a regular basis at the end of 1997, she continued to perform chair work at home.
*661 Robert testified that Sherry returned to work for McConnell's on a regular basis in April 2000, which was prior to the couple's acquisition of a new vehicle. On the other hand, Sherry stated that her date of return was in May 2001, which was after their vehicle purchase. Robert conceded that Sherry had to work so they could afford the payments on that newly purchased vehicle. The acquisition date of the vehicle is not in evidence.
Prior to their separation in 2002, Sherry and Robert were both employed. According to Robert, Sherry was paid different rates based on the work being performed for McConnell's, averaging an hourly rate of $12.50. He testified that she had no set schedule and that her work hours varied, without indicating the average number of hours worked. Sherry stated that her regular rate of pay was $11 per hour and that her work hours varied from an average of 20 to 25 hours a week. Sherry maintained that she never earned more than $15,000 a year since she returned to work.[4] Sherry explained that the variance in her pay was due to the flexibility in her work hours, because she worked for her sister. According to Robert, all of their income was reported on their tax returns.[5]
While Robert and Sherry worked, the minor children were placed in day care. Robert testified that the children were removed from day care by Sherry in April of 2002. Sherry was uncertain as to whether the children were removed when she got laid off or some time before. Sherry explained that her financial situation prompted this decision. Sherry testified that she was laid off from her employment with McConnell's a few months prior to trial because of the financial condition of the business. Other employees had been laid off from work before her; she was the last to be laid off. According to Sherry, her brother-in-law worked full time in the business, which was in a bad financial bind.
Sherry could not recall the specific date on which she had been laid off. She could only remember that it occurred in the middle of this litigation. She testified that since that time, she has been doing painting and other work for her employer at home when needed. However, she explained that work had not been steady and that in the few months before trial, she had only earned $150 doing that type of work. Sherry explained that she did not apply for unemployment compensation because, as a part-time employee, she would not have qualified. Sherry also admitted to earning $50 for assisting her ex-husband with a job.
According to Robert, bank records reflect that Sherry deposited $6,500 in late April 2002. He did not know how she got this money. Sherry explained that $6,000 of the deposited amount came from cash advances from a credit card company. No explanation was given as to the source of the other $500.
Robert argued that Sherry was voluntarily unemployed. According to Robert, Sherry's alleged unemployment was not based on her desire to be a "stay-at-home" mother. He testified that Sherry did not stay home every day to care for the children and that the children were being watched by others all or part of the time.
After considering this evidence, the trial court found that Sherry was capable of *662 earning $11 per hour working for her sister, resulting in a monthly income of $1,905[6] being imputed to her for purposes of computing child support. These factual findings were apparently made subsequent to a determination that Sherry was voluntarily unemployed or underemployed. The trial court obviously felt that Sherry's voluntary unemployment was not in good faith, apparently not believing that extenuating circumstances beyond her control influenced or necessitated the voluntary change in employment.
Voluntary unemployment or underemployment is a fact-driven consideration. Koch v. Koch, 97-1600 (La.App. 4th Cir.4/22/98), 714 So.2d 63, 66. The trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error. State v. Battson, 36,336 (La.App. 2nd Cir.9/18/02), 828 So.2d 132, 135. Whether a spouse is in good faith in ending or reducing his or her income is a factual determination which will not be disturbed absent manifest error. Stephenson v. Stephenson, 37,323 (La.App. 2nd Cir.5/14/03), 847 So.2d 175, 184. Furthermore, the trial court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. Havener v. Havener, 29,785 (La.App. 2nd Cir.8/20/97), 700 So.2d 533, 539. Based on our review of the record, we do not find that the trial court manifestly erred in determining that Sherry was voluntarily unemployed or underemployed or in finding reasonable factual support for the imputation of $1,905 in monthly income to Sherry. However, Sherry argues that since both children were under the age of five at the time of trial on September 6, 2002, LSA-R.S. 9:315.11 precludes a determination of her income earning potential because she was absolutely unemployable by operation of law.
LSA-R.S. 9:315.11 provides, in pertinent part:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is ... caring for a child of the parties under the age of five years.
Sherry contends the application of LSA-R.S. 9:315.11 is mandatory and not discretionary, and therefore the trial court committed legal error in failing to apply this law. Robert points out that the court awarded physical custody of the children on a 50/50 basis and questions the applicability of LSA-R.S. 9:315.11 under such circumstances. He argues the trial court was correct in not applying the statute in this case.
The clear meaning of LSA-R.S. 9:315.11 is that the income earning potential of a party who is voluntarily unemployed or underemployed will not be considered in the calculation of child support if that party is caring for a child of the parties under the age of five years. In this case, the parties were awarded "shared custody" of the children on a 50/50 basis. See LSA-R.S. 9:315.9(A)(1). Based on this custody sharing arrangement, we conclude that the trial court legally erred in finding that Sherry was voluntarily unemployed or underemployed for the purpose of calculating child support for the period of time during which she had actual custody of the under-five-year-old children and was required to provide for their care. Nonetheless, we do not find under the facts of this case that LSA-R.S. 9:315.11 automatically precluded the trial court from finding that Sherry was voluntarily unemployed or underemployed *663 for the period of time during which Robert had actual custody of the children. Where the parties share custody on a 50/50 basis as in this case, a reasonable interpretation of LSA-R.S. 9:315.11 would limit its application such that a custodial parent would only be deemed unemployable for 50 percent of the month; in other words, "caring" would not be undertaken on a fulltime basis. As to the remaining 50 percent of the time, the trial court is free to determine if the party is voluntarily unemployed or underemployed.[7] If such a finding is made, then the trial court should make a determination of the party's income earning potential based on the particular set of facts and circumstances of the case.
Having previously found no manifest error in the trial court's determination of the voluntariness of Sherry's unemployment, we conclude that, based on such a finding by the trial court, she was also voluntarily unemployed or underemployed for part-time work during 50 percent of the month. Furthermore, under the particular facts of this case, we determine that Sherry's income earning potential based on part-time employment was $952.60.[8] Therefore, we reduce the monthly income imputed by the
trial court to Sherry from $1,905 to $952.60.
Sherry was capable of earning $952.60, and Robert earned a monthly income of $3,519 for a combined gross income of $4,471.60. With a combined gross income of $4,471.60 per month, and in a shared custody arrangement with the younger of the two children being born on January 27, 1999, Sherry is entitled to the sum of $426.63 per month from Robert for the support of the children until January 27, 2004,[9] and $381 per month thereafter.[10]See LSA-R.S. 9:315.9, 9:315.19, and 9:315.20.

Interim Spousal Support
Sherry maintains that the trial court erred in failing to order interim periodic spousal support, presumably based on her capacity to earn income.[11] A spouse may be awarded an interim spousal support allowance based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. LSA-C.C. art. 113. Absent a pending demand for final spousal support, an award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce. LSA-C.C. art. 113. The spouse *664 seeking interim spousal support bears the burden of proving his or her entitlement to such. Clark v. Clark, 34,314 (La.App. 2nd Cir.11/1/00), 779 So.2d 822, 825, writ denied, 00-3196 (La.1/12/01), 781 So.2d 563.
The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion. Clark v. Clark, 779 So.2d at 826; Thomey v. Thomey, 33,000 (La.App. 2nd Cir.4/7/00), 756 So.2d 698, 702. The trial court was able to examine the affidavits of income and expenses and consider the financial condition and needs of the parties. After reviewing the entire record in this matter, we are unable to find that the trial court erred or clearly abused its discretion.[12] Accordingly, we find no error in the trial court's denial of Sherry's request for interim spousal support.

Decree
For the foregoing reasons, the judgment of the trial court is amended to award Sherry Lane Romanowski child support in the sum of $426.63 per month until January 27, 2004, and $381 per month thereafter. Otherwise, the judgment is affirmed. Costs of this appeal are assessed to the parties equally.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. LSA-R.S. 9:315(C)(6)(b).
[3] Robert testified that prior to being employed by McConnell's, Sherry worked for another furniture company.
[4] However, she testified that her two-week's pay received on May 23, 2001, was $198; on June 8, 2001, was $494; on July 6, 2001, was $664.50; and on November 9, 2001, was $581.
[5] The tax return for 2000 revealed total wages of $42,300, $41,768.74 for Robert and $531.63 for Sherry from McConnell's. No other tax returns were introduced at trial.
[6] $11 (hourly rate) × 40 (hours per week) × 4.33 (weeks per month) = $1,905.
[7] Even if the court did not determine that the party was voluntarily unemployed or underemployed, any actual income would still be considered by the court in calculating child support. Settle v. Settle, 25,643 (La.App. 2nd Cir.3/30/94), 635 So.2d 456, 463, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194.
[8] $11 (hourly rate) × 40 (hours per week) × 2.165 (weeks per month) = $952.60.
[9] The parties' youngest child reaches the age of five on this date, and the exception for voluntary unemployment or underemployment provided in LSA-R.S. 9:315.11 no longer applies in this case.
[10] This was the amount of child support owed by Robert as determined by the trial court when considering Sherry's income earning potential on full-time employment based on a finding that she was voluntarily unemployed or underemployed. This child support calculation has not been disputed on appeal.
[11] Although the issue of interim periodic spousal support was before it, the judgment is silent on this issue. When a judgment is silent as to a claim or demand, it is presumed that the trier of fact denied the relief sought. Caro v. Caro, 95-0173 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 520; Prevost v. Jobbers Oil Transp. Co., 95-0224 (La.App. 1st Cir.10/6/95), 665 So.2d 400, 405 n. 3, writ denied, 96-0440 (La.4/8/96), 671 So.2d 336.
[12] Under the particular facts of this case, we find it unnecessary to determine what, if any, impact LSA-R.S. 9:315.11 has on a determination of a party's entitlement to spousal support.