ROBERT TODD HADDOX
v.
STACY STEELE HADDOX
No. 2008 CU 2425
Court of Appeals of Louisiana, First Circuit.
August 24, 2009
Not Designated for Publication
NANCY SUE GREGORIE, Attorney for Plaintiff-Appellee, Robert Todd Haddox.
CHRISTOPHER T. CASCIO, Attorney for Defendant-Appellant, Stacy Steele Haddox.
Before: PARRO, KUHN, GUIDRY, McCLENDON, and WELCH, JJ.
WELCH, J.
In this dispute concerning child custody and child support, the defendant, Stacy Haddox, challenges a judgment of the trial court that failed to designate a domiciliary parent and that found she was voluntarily underemployed for purposes of calculating child support. The plaintiff, Robert Todd Haddox, has answered the appeal with regard to the trial court's refusal to designate a domiciliary parent and its order that the parties mediate all disputed issues between them. For reasons that follow, we reverse in part and affirm in part the judgment of the trial court and remand for further proceedings. We also grant in part the answer to the appeal.

I. FACTUAL AND PROCEDURAL HISTORY
Robert Todd Haddox and Stacy Haddox were married on November 22, 1997, and during their marriage, three children were born. On October 5, 2006, Robert filed a petition for divorce, seeking, among other things, that he be awarded joint custody of the minor children, that he be designated as the children's domiciliary parent, and that he be awarded child support. On November 6, 2006, Stacy filed an answer and reconventional demand, also requesting that the parties be awarded joint custody of the children, that she be designated as the children's domiciliary parent, and that she be awarded child support.
On December 5, 2006, the parties entered into a consent judgment that provided, among other things, that the parties would be awarded joint custody of the minor children and would share physical custody equally. Additionally, although Robert was ordered to pay child support in the amount of $933.00 per month, retroactive to November 6, 2006, the judgment provided that if Stacy received any disability payments, child support would be recalculated, retroactive to November 6, 2006, to include the disability sums awarded to her. A domiciliary parent was not designated in the consent judgment. Subsequently, in April 2007, Stacy was awarded social security disability payments.
On January 30, 2008, and March 10, 2008, a trial on the issues of the designation of domiciliary parent and the recalculation of child support was held. After evidence was introduced and the matter submitted, the trial court rendered judgment maintaining the award of joint custody of the children, with the parents sharing equal physical custody of the children, and declining to designate a domiciliary parent. Additionally, the trial court ordered that for each and every decision with respect to the minor children on which they could not agree, the parties were to mediate the issue to conclusion. With respect to child support, the trial court ordered that additional information with respect to Stacy's income be provided to it within fourteen days, and thereafter, it would determine her income for purposes of calculating child support.
On March 13, 2008, the trial court rendered judgment finding that child support would be based on Stacy's 2003 monthly gross income rather than her social security disability payments.[1] A written judgment in accordance with the trial court's rulings on all issues was signed on June 16, 2008. From this judgment, Stacy has appealed, and Robert has answered the appeal.

II. ASSIGNMENTS OF ERROR
On appeal, Stacy Haddox contends that the trial court erred in: (1) failing to name her as the domiciliary parent and (2) finding that she was voluntarily underemployed and imputing income to her for the purpose of calculating child support because (a) her underemployment was through no fault or neglect on her part and (b) she was caring for a child of the parties under the age of five years.
In Robert's answer to the appeal, he contends that: (1) the trial court erred in refusing to designate a domiciliary parent, (2) it is in the best interest of the minor children that he be designated as the domiciliary parent, and (3) the trial court abused its discretion by ordering the parties to mediate every issue to conclusion, effectively prohibiting them from returning to court.

III. LAW AND DISCUSSION

A. Domiciliary Parent

1. Standard of Review
A trial court's determination of child custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. R.J. v. M.J., 2003-2676, p. 4 (La. App. 1st Cir. 5/14/04), 880 So.2d 20, 23. However, in this case, as in most custody cases, the trial court's determination not to designate a domiciliary parent was based heavily on factual findings. As an appellate court, we cannot set aside a trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. See R.J., 2003-2676 at p. 5, 880 So.2d at 23. If a court of appeal determines that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render judgment on the merits. LeBlanc v. Stevenson, XXXX-XXXX, p. 3 (La. 10/17/00), 770 So.2d 766, 770. However, where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Jones v. Black, 95-2530 (La. 6/28/96), 676 So.2d 1067 (per curiam).

2. Louisiana Revised Statutes 9:335
Louisiana Revised Statutes 9:335 governs joint custody arrangements and it provides as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.
Subsection B of this statute expresses a legislative preference and intent that courts deciding joint custody matters select a parent with whom the child is to primarily reside: "In a decree of joint custody the court shall designate a domiciliary parent." Wolfe v. Hanson, XXXX-XXXX, p. 5 (La. App. 1st Cir. 5/2/08), 991 So.2d 13, 17, writ denied, XXXX-XXXX (La. 6/27/08), 983 So.2d 1292. The domiciliary parent has legal authority "to make all decisions affecting the child," subject to judicial review "upon motion of the other parent." Id. Louisiana Revised Statutes 9:335 provides for only two circumstances in which a court may decline to name a domiciliary parent in a joint custody context when: (1) "there is an implementation order to the contrary" or (2) "for other good cause shown." Wolfe, XXXX-XXXX at pp. 5-6, 991 So.2d at 17.
In this case, the trial court did not name a domiciliary parent. On appeal, both Stacy and Robert contend that the trial court erred in failing to designate a domiciliary parent. Thus, on review, we must inquire whether the facts of this case support either of the above statutory exceptions.
An "implementation order to the contrary" must meet the requirements set forth in La. R.S. 9:335(A) by specifically allocating (1) physical custody times for each parent and (2) "the legal authority and responsibility of the parents." Wolfe, XXXX-XXXX at p. 6, 991 So.2d at 17. If, however, the joint custody decree neither designates a domiciliary parent nor provides otherwise in an implementation order that allocates the legal authority and responsibility of the parents, the second potential exception of subsection (B)(1) must be met: "good cause" must be shown for the court's decision not to assign a domiciliary parent. Id. This is echoed by subsection (A)(1), which requires the court to render a joint custody implementation order "except for good cause shown." Id.
Although La. R.S. 9:335 does not define "good cause," good cause should be supported by facts in the record. See Wolfe, XXXX-XXXX at p. 6, 991 So.2d at 17 and Walker v. Walker, 38,982, pp. 7-8 (La. App. 2nd Cir. 8/18/04), 880 So.2d 956, 961-962 (a trial court's given reasons for not naming a domiciliary parent amounted to an "open-ended conclusion" based on the trial court's "comfort level" and did not reach the standard of "good cause shown").
After a thorough review of the record in this matter, we conclude that the joint custody arrangement in this matter does not conform to the requirements of La. R.S. 9:335. As the trial court specifically opted not to designate a domiciliary parent, either a valid implementation order to the contrary must have been provided by the trial court or "good cause" not to name a domiciliary parent must have been shown. Neither the trial court's judgment nor its reasons for judgment allocates the legal authority and responsibility of the parents. Therefore, there is no valid implementation order in this matter and the requirements of this exception are not met.
With regard to the second exception, the trial court found that good cause existed not to name a domiciliary parent. Specifically, in its reasons for judgmentboth oral and writtenthe trial court stated that both parents had shown an unwillingness to cooperate with each other, to facilitate a relationship between the children and the other parent, and would "use domiciliary status as a weapon" against the other parent. In support of its decision, the trial court relied on Miller v. Miller, XXXX-XXXX (La. App. 3rd Cir. 10/31/01), 799 So.2d 753 and Brewer v. Brewer, 39,647 (La. App. 2nd Cir. 3/2/05), 895 So.2d 745.
After reviewing the Miller decision, we find the trial court's reliance on it is misplaced. In the trial court's oral reasons for judgment, it stated that under the Miller decision, "it is not necessary that a domiciliary parent be named in a joint custody implementation plan even where it is clear that the parents will likely disagree on important decisions about the children, such as recreational activity, school issues, and discipline." However, we do not find that Miller stands for this proposition. In fact, a careful review of the entire Miller decision reveals that the third circuit specifically found that it was necessary to designate a domiciliary parent where the parents involved had extreme animosity and failed to effectively communicate with each other. In ruling that a domiciliary parent should have been named, the court stated:
It appears that [the mother and father's] relationship has been marked with charges and countercharges of drug abuse, sexual promiscuity, neglect, physical abuse, emotional abuse and violence.... It is foreseeable, due to [the mother and father's] inability to communicate, that the children will be subject to differing rules every six weeks. ... Such circumstances will not foster the children's best interests. Although it is not necessary that a domiciliary parent be named in a joint custody implementation plan where it is clear that the parents will likely disagree on important decisions about the children, such as recreational activity, school issues and discipline, as in this case, a domiciliary parent should have been named.

Miller, XXXX-XXXX at pp. 8-9, 799 So.2d at 758-759. (Emphasis added.)
Thus, while the court in Miller acknowledged that a domiciliary parent need not always be named, it did not find that "good cause" existed for failing to name a domiciliary parent where the parents involved have demonstrated significant animosity towards one another.
With regard to the trial court's use of the Brewer decision, we note that this court, in Wolfe, examined both the Miller and the Brewer decisions and specifically rejected the reasoning of the second circuit in Brewer. In Wolfe, this court noted that in Brewer, the second circuit found that a court's determination that the parties are unable to communicate effectively with each other regarding issues concerning the child may constitute good cause for refusing to designate a domiciliary parent. However, this court also noted, citing the Miller case, that the contrary may also be truedissention between the parents dictates adherence to the statutory normi.e., the designation of a domiciliary parent. See Wolfe, XXXX-XXXX at p. 8, 991 So.2d at 18.
In Wolfe, the mother was initially named the domiciliary parent of the child. Following their divorce, the father sought a modification of the custody arrangement, which the trial court granted by removing the designation of the mother as the domiciliary parent and choosing not to designate a domiciliary parent. The trial court, in its reasons for judgment, stated that the failure of the parents to effectively communicate was a significant factor in its decision not to appoint a domiciliary parent. The trial court also stated that it was concerned that if one of the parties were designated as the domiciliary parent, the "winner/loser" dynamic would continue to exist and be played out between the parties to the detriment of the child.
In reversing the trial court's decision not to name a domiciliary parent, this court in Wolfe, following the reasoning of the third circuit in Miller (rather than the reasoning of the second circuit in Brewer), stated:
Without a domiciliary parent, an agreement must be reached between [the father] and [the mother] on each and every important decision regarding [the child]. The trial court acknowledged that [the father] and [the mother] had failed to effectively communicate in the past. In fact, their "heated arguments" have led to police involvement. We do not believe it to be in the best interest of the child to invite confrontation each and every time an important decision is necessitated. Disagreement and conflict between [the child's] parents will lead more likely to deadlock and further strife than to a stable environment for [the child] as he prepares to begin school. It is a reality that immediate decisions will need to be made regarding a child. School and medical emergencies will arise that will require immediate action and the history of these two parents' inability to cooperate evidences the necessity of a domiciliary parent or order allowing one to make the decision.
Wolfe, XXXX-XXXX at p. 9, 991 So.2d at 18-19.
Like the parties in the Wolfe case, in this case, the trial court found, and we agree, that Stacy and Robert have severe animosities toward one another and have a history of demonstrating inappropriate conduct towards one another in front of their children. The trial court's finding in this regard is supported by testimony establishing that Robert refused to allow Stacy to visit with the children on Mother's Day and Robert's admission that he occasionally cursed Stacy in front of their children. It is also supported by Stacy's admission that she "keyed" Robert's car, that she dumped a beer on him in a public restaurant, and that she told their children that she was going to have their father killed. The trial court viewed this animosity between the parents as a justifiable basis for not naming a domiciliary parent.
Without a domiciliary parent, an agreement must be reached between Stacy and Robert on each and every important decision regarding their children. However, the animosity between Stacy and Robert, along with their history of being unable to cooperate, evidences the necessity of designating a domiciliary parent or rendering an implementation order allowing one to make the decision. Thus in this case, we do not find a reasonable basis in the record to support the conclusion that "good cause" exists not to name a domiciliary parent. Accordingly, we find that the trial court abused its discretion in failing to name a domiciliary parent in this matter, and we hereby reverse that portion of the June 16, 2008 judgment. We remand this matter for the trial court to determine which parent should be designated as the domiciliary parent and/or for the entry of an implementation order allocating the legal authority and responsibilities of the parents. See La. R.S. 9:335(A) and (B).

B. Child Support
The Louisiana child support guidelines set forth the method for implementation of the parental obligation to pay child support. See La. R.S. 9:315.1(A). To apply the guidelines, the court must initially determine the gross income of the parties. See La. R.S. 9:315.2(A). Income means the actual gross income of a party, if the party is employed to full capacity. La. R.S. 9:315(C)(5)(a). Income also means the potential income of a party, if the party is voluntarily unemployed or underemployed; in such a case, his gross income shall be determined as set forth in La. R.S. 9:315.11. See La. R.S. 9:315(C)(5)(b) and 9:315.2(B). If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential (rather than actual gross income), unless the party is caring for a child of the parties under the age of five years. La. R.S. 9:315.11. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. La. R.S. 9:315(C)(5)(b).
Voluntary unemployment or underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse. Romanowski v. Romanowski, XXXX-XXXX, p. 6 (La. App. 1st Cir. 2/23/04), 873 So.2d 656, 660. In virtually every case where a parent's voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating circumstances beyond that parent's control which influenced or necessitated the voluntary change in employment. Id. Whether a spouse is in good faith in ending or reducing his or her income is a factual determination that will not be disturbed absent manifest error. Romanowski, XXXX-XXXX at p. 8, 873 So.2d at 662. With regard to the factual findings made by the trial court in determining an award of child support, appellate review of such factual findings is subject to the manifest error/clearly wrong standard of review. Id.
On appeal, Stacy contends that the trial court erred in finding that she was voluntarily underemployed and in imputing income to her in the amount of $2,540.00 per month for the purpose of calculating child support. Specifically, Stacy contends that her underemployment or unemployment was not due to her own fault or neglect, and therefore, she should not be deemed underemployed. Alternatively, she contends that even if she is found to be voluntarily underemployed, the trial court erred in finding that she was voluntarily underemployed for the purpose of calculating child support during those periods of time that she has physical custody of their youngest child, who is under the age of five.[2]
According to the evidence in the record, Stacy's gross income from 2003 was $30,483.49 or $2,540.29 per month. However, Stacy testified that she is not currently earning any income and that she is unable to work due to severe back pain and numbness in her legs. She explained that in March 2004, following the birth of her third child, she had surgery on her back to correct a tethered spinal cord. Following her surgery, Stacy went back to work for a short period of time at Link Staffing performing sales work. Stacy claimed that she was fired from that job because she was no longer able to get in and out of her car because of her back pain. However, Stacy admitted that she did not look for any further employment following her termination with Link Staffing, and that Robert and she decided she would not return to work because it would not have been monetarily feasible for her to work, considering the costs of daycare, gas, and work clothes.
In 2007, Stacy became eligible for social security disability payments in the amount of $796 per month, and in April 2007, she also received a lump sum payment from social security for back payments in the amount of $20,000. Thus, Stacy contends that she is in good faith with regard to her alleged voluntary unemployment because it did not result through her fault or neglect.
However, the record also reveals that Stacy has been able to travel to various establishments and participate in many costly activities since her surgery. She admitted that she gambles and is a card holder at four gaming establishments located from 20 minutes to 1 hour and 45 minutes from her home. While she claims that she does not personally drive to these casinos, she does gamble upon arrival. Regarding the feasibility of Stacy working after the birth of their third child and maintaining the cost of daycare, Robert testified that they would have been able to afford the cost of daycare for all of the children. Furthermore, after Stacy was terminated from her employment, Stacy enrolled the child in BREC daycare.
When evaluating claims of unemployment due to medical reasons, courts often look to specific medical evidence or testimony indicating that the person is unable to work before finding that a party is unemployed through no fault or neglect of their own. In Wyatt v. Wyatt, 39,518 (La. App. 2nd Cir. 4/6/05), 899 So.2d 788, the court found that the father's retirement from work was voluntary and not due to medical reasons. Although evidence was submitted to the court from a treating physician stating that the father had lower back pain which limited some of his daily activities and work, the physician did not state that the father was unable to work, nor did he state that the father had to retire due to medical reasons. Wyatt, 39,518 at pp. 6-7, 899 So.2d at 792. Furthermore, the evidence submitted showed that the father did retain work as a substitute teacher after his retirement. Thus, the court found that the father was not unemployable or unable to work.
After considering all of the evidence, the trial court determined that it would use Stacy's gross income from her 2003 W-2, instead of the amount of her current monthly social security disability benefit. Inherent in the trial court's ruling in this regard was a finding that Stacy was voluntarily underemployed and that child support would be calculated based on her income earning potentialspecifically, that which she was previously able to earn prior to her voluntary unemployment (her 2003 gross income). Based on our review of the record, we do not find that the trial court manifestly erred in determining that Stacy was voluntarily unemployed or in imputing income to her in the amount of $2,540.00 per month for the purpose of calculating child support. Although Stacy testified that she is not able to work because of her back pain and leg numbness, she did not offer any medical evidence or testimony establishing that her condition rendered her unemployable or unable to work. While she has not retained employment since her termination from Link Staffing, she admitted that she has not attempted to look for any employment. Furthermore, the testimony established that despite her back pain and numbness, she has been able to travel and sufficiently move around since the surgery. Thus, we find no merit to her contention that her unemployment was through no fault or neglect of her own.
However, we do find merit in Stacy's contention that the trial court erred in finding that she was voluntarily unemployed for the purpose of calculating child support during those periods of time that she has physical custody of their youngest child, who is under the age of five. The clear meaning of La. R.S. 9:315.11 is that the income earning potential of a party who is voluntarily unemployed or underemployed will not be considered in the calculation of child support if that party is caring for a child of the parties under the age of five years. Romanowski, XXXX-XXXX at p., 873 So.2d at 662. Where the parties share equal physical custody of the children, a reasonable interpretation of La. R.S. 9:315.11 would limit its application, such that a custodial parent would only be deemed unemployable for fifty percent of the month; in other words, "caring" would not be undertaken on a fulltime basis. Romanowski, XXXX-XXXX at p. 9, 873 So.2d at 663.
In this case, the parties initially agreedand the trial court subsequently orderedthe parties to share equal physical custody of their minor children. One of their children was under the age of five at the time Stacy initially requested child support and at the time of the trial of this matter. However, when the trial court ordered that Stacy's 2003 income be used to calculate child support due to her voluntary underemployment, it did not exclude the period of time in which she was caring for and had actual physical custody of the child of the parties that was under the age of five.
Robert contends that La. R.S. 9:315.11 is not applicable to this case because Stacy does not actually "care" for her minor child, since the child is in daycare and since Stacy takes numerous medications throughout the day. However, we have not found, nor have we been directed to, any authority suggesting that the phrase "caring for a child" as written in La. R.S. 9:315.11 would not include time in which the child is under the physical custody of a parent, yet is in daycare or school. While the child may be in daycare during the day, Stacy is still primarily responsible for the care of that child while in her physical custody. Furthermore, the testimony at trial indicated that the minor child under five had only been enrolled in the BREC daycare since August 2007. With regard to Stacy's use of prescription medication, we can find no evidence in the record establishing that her medication prevents her from caring for the children. Accordingly, we find that the trial court erred in imputing income to Stacy for that period of time that she has physical custody of and is caring for a child of the parties under the age of five years. We hereby remand this matter to the trial court for a recalculation of child support using Stacy's income earning potential, adjusted to exclude the period of time for which she has physical custody of and is caring for a child of the parties under the age of five. However, in its recalculation of child support, the trial court should also consider the actual income received from social security by Stacy during the period of time in which she has physical custody of and is caring for a child of the parties under the age of five. See La. R.S. 9:315(C)(3)(a).

C. Mediation
Lastly, in this case, the judgment of the trial court provided:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED for each and every decision with respect to the minor children that the parties can not agree on, the parties are to mediate the issue to conclusion. Lorraine McCormick is appointed...as mediator in this case and she is to mediate all major decisions between the parties on which they can not agree.
Robert contends that the trial court abused its discretion in ordering the parties to mediate every issue to conclusion. We agree.
Generally, the power and duty to adjudicate disputes concerning child custody and visitation is vested with the district court. See Edwards v. Edwards, 99-994, p. 3 (La. App. 3rd Cir. 12/22/99), 755 So.2d 331, 334.
However, we are not aware of, nor have the parties or the trial court directed us to any authority that allows or provides for the trial court to effectively prohibit the parties from returning to court on issues of child custody. Rather, we find such an order is contrary to the best interests of the children, as it could prohibit the parties from obtaining a quick and meaningful solution to a dispute concerning important or even emergency decisions with respect to the children.
Furthermore, while we understand the trial court's concern that the parties might "use the court as a forum to make decisions for the children," we note that the trial court's concern in this regard would have been eliminated if it had simply designated a domiciliary parent or otherwise set forth, in a joint custody implementation plan, the legal authority and responsibility of the parents. Therefore, absent any statutory or jurisprudential authority for ordering mediation of all disputes to conclusion, we must conclude that the trial court erred in doing so.
Accordingly, the portion of the June 16, 2008 judgment of the trial court that ordered the parties to mediate every issue upon which they disagree to conclusion is hereby reversed.

IV. CONCLUSION
For all of the above and foregoing reasons, the June 16, 2008 judgment of the trial court is hereby reversed, insofar as it failed to designate a domiciliary parent and ordered the parties to mediate disputes between them to conclusion. The judgment is also reversed insofar as it found that Stacy Haddox was voluntarily underemployed during the periods of time that she has physical custody of and is caring for a child of the parties under the age of five. This matter is hereby remanded to the trial court for the designation of a domiciliary parent or the rendering of an implementation order allocating the legal authority and responsibilities of the parents and for a recalculation of child support in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.
All costs of this appeal are assessed equally between the parties.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS; AND ANSWER TO APPEAL GRANTED IN PART.
GUIDRY, J., dissenting in part.
I believe the majority errs in holding that the trial court only erred in part in finding Stacy voluntarily unemployed "for that period of time that she has physical custody of and is caring for a child of the parties under the age of five years." By its plain wording, La. R.S. 9:315.11 provides that "[i]f a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential ... unless the parry is caring for a child of the parties under the age of five years." There is no stated limitation in the statute or in any of the other child support articles to the exception provided in La. R.S. 9:315.11 for finding a party voluntarily unemployed or underemployed. Yet, through the guise of statutory interpretation, the majority has decreed a limitation to the application of the exception by holding that a party can still be found voluntarily unemployed or underemployed for that period of time that the parent does not have physical custody of the child. If such an application was intended by the Legislature, it could easily have so provided, and more importantly, it is the province of the Legislature to do so. So, in the absence of any legislative authority for the holding reached by the majority on the issue of Stacy's voluntary unemployment, I must respectfully dissent in part on that issue.
McCLENDON, J., dissents in part and assigns reasons.
Although I agree with the majority that this matter should be remanded for the determination of a domiciliary parent or for the entry of an implementation order, I disagree with the affirmance of the trial court's finding that Stacy was voluntarily unemployed for purposes of calculating child support.
Louisiana Revised Statutes 9:315.11A provides, in pertinent part: "If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years." (Emphasis added.) I disagree with the majority's statement that a reasonable interpretation of LSA-R.S. 9:315.11 makes it applicable oniy 50% of the time in this case, because the parties share equal custody of the children. According to the majority, LSA-R.S. 9:315.11 does not apply when the other parent has physical custody of a child less than five years of age. This automatic prorata reduction, when there is a child under the age of five, for the period of time that the other parent has physical custody is an illogical and erroneous application of the clear language of the statute and creates a tortured child support formula. Further, to the extent that Romanowski v. Romanowski, 03-0124 (La.App. 1 Cir. 2/23/04), 873 So.2d 656, supports the majority's position, I believe it is incorrect.
KUHN, J., concurring.
While I agree with the majority's order of a remand, I write separately to clarify that the record overwhelmingly supports the trial court's conclusion that there is a great deal of animosity between the parties in this case. Because of this finding, equal sharing of custody and shared decision making by the parents simply is not in the best interest of the children. To facilitate resolution of the issues between the parties, the trial court should not only decide on an implementation plan but also should determine in whose physical custody the children should be placed. A visitation plan should be fashioned that fosters and insures a viable child-parent relationship for each parent with each child. Once the implementation plan is created, a change of circumstances necessarily has occurred, thus, allowing Stacy the opportunity to present evidence of her disability and requiring the trial court to revisit the issue of the voluntariness of her unemployment. Indeed, the entire issue of child support should be revisited by the trial court. Lastly, based on this court's interpretation of La. R.S. 9:315.11 in Romanowski v. Romanowski, XXXX-XXXX, p. 9 (La. App. 1st Cir. 2/23/04), 873 So.2d 656, 663,1 must concur in the adjustment of child support to exclude the period of time Stacy had physical custody and was caring for the child that was under the age of five.
NOTES
[1] Based on the trial court's ruling in this regard, the parties entered into a stipulation providing that Robert would pay child support in the amount of $452.00 per month, retroactive to November 6, 2006.
[2] The youngest child was born on February 3, 2004.