# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 11-1366

STATE OF LOUISIANA
DEPT. OF CHILDREN AND FAMILY SERVICES
CHILD SUPPORT ENFORCEMENT

VERSUS

SONYA Y. SEAMAN

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. CS11-34B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

Peters, J., dissents and assigns written reasons.

**AFFIRMED.**

Alfred B. Shapiro
Shapiro & Shapiro, L.L.C.
1500 Lobdell Avenue, Suite B
Baton Rouge, Louisiana 70806
(225) 928-4193
Counsel for Defendant/Appellant:
    Sonya Reeder Seaman

George L. Celles IV
Assistant District Attorney
Tenth Judicial District
452 Jefferson Street
Natchitoches, Louisiana  71457
(318) 238-4000
Counsel for Appellee:
    State of Louisiana

**GENOVESE, Judge.**

In this child support case, Defendant, Sonya R. Seaman,[1] was ordered to pay $756.00 in child support for her three minor children. She appeals the trial court's determination that she was voluntarily unemployed or underemployed in calculating her child support obligation. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The present case involves the child support obligation calculated following the divorce of Charles Seaman and Sonya Seaman. The Louisiana Department of Social Services (DSS) filed a Rule and Order to Show Cause on March 29, 2011, why Ms. Seaman "should not be ordered to pay a reasonable amount as child support for the minor children: HAILEY SEAMAN, born 10/15/2000; and ERIN and JANA SEAMAN, twins[,] born 11/19/2003." The matter was heard and judgment was rendered on May 31, 2011.

The trial court found Ms. Seaman to be voluntarily unemployed or underemployed and, using the most recently published Louisiana Occupational Employment Wage Survey, determined that her income earning potential was $3,425.00 per month. Accordingly, after imputing this income earning potential to her, Ms. Seaman was ordered to pay child support in the amount of $756.00 per month for support of the three minor children. Ms. Seaman appeals, and we affirm.

## ASSIGNMENT OF ERROR

In her sole assignment of error, Ms. Seaman asserts that the trial court erred in ruling that she was voluntarily unemployed or underemployed and in using her earning potential in the calculation of child support.

---

[1]Though the Rule and Order to Show Cause instituting this proceeding listed Defendant's middle initial as "Y.," this court notes that the judgment and briefs filed herein list Defendant's middle initial as "R."

# LAW AND DISCUSSION

The applicable standard of review was recently set forth by this court in

*State v. Wiltz*, 11-728, p. 3 (La.App. 3 Cir. 11/2/11), ___ So.3d ___, ___ (quoting

*Aguillard v. Aguillard*, 08-1131, p. 6 (La.App. 1 Cir. 12/23/08), 9 So.3d 183,187):

> Voluntary unemployment or underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses, and its factual determinations will not be disturbed on appeal absent a showing of manifest error. Whether a spouse is in good faith in ending or reducing his or her income is a factual determination which will not be disturbed absent manifest error. *Romanowski [v. Romanowski]*, [03-124 (La.App. 1 Cir. 2/23/04), 873 So.2d 656]. We cannot substitute our findings for the reasonable factual findings of the trial court. *See Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882-83 (La.1993).

For the purpose of determining child support, La.R.S. 9:315(C)(5) (emphasis

added) defines "income" as:

> (a) Actual gross income of a party, if the party is employed to full capacity; or
>
> (b) Potential income of a party, if the party is voluntarily unemployed or underemployed. *A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.*
>
> (c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.

Louisiana Revised Statutes 9:315.11(A) provides that:

> If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey.

The issue before the trial court was whether Ms. Seaman was voluntarily unemployed or underemployed. The burden was on Ms. Seaman to show that she was not voluntarily unemployed or underemployed. The issue before this court is whether the trial court was manifestly erroneous in its judgment. *See State, Dep't of Social Services v. Swords*, 08-580 (La.App. 3 Cir. 11/5/08), 996 So.2d 1267 (citing *McDaniel v. McDaniel*, 03-1763 (La.App. 3 Cir. 5/19/04), 878 So.2d 686). In this appeal, Ms. Seaman argues "[t]here is no reasonable basis whatsoever for the trial court applying [La.R.S.] 9:315.11 and imputing income to [her]. Nor is there any evidentiary basis for such."

Ms. Seaman testified that she obtained a bachelors degree of arts in elementary education from Northwestern State University in 1991. She was an elementary school teacher until 1997. Thereafter, Ms. Seaman either worked in Mr. Seaman's law office or in one of the liquor stores they owned until the parties divorced. As a result of the divorce settlement, Ms. Seaman became the sole owner of a liquor store which she ultimately sold. Thereafter, Ms. Seaman eventually moved out of Louisiana, and the three minor children remained in the custody of Mr. Seaman.

Ms. Seaman testified that she worked for a short time in Montana and then moved to Colorado where she worked at various times as a commission based photographer and at a UPS store, as a ski instructor, and at the Vail Game Creek Club for $10.00 an hour. According to Ms. Seaman, she moved to Colorado because she had no place to live here in Louisiana, and she had a friend who offered her a place to live in Colorado. Ms. Seaman claimed that she was initially unable to obtain a teacher's certificate in Colorado, which would have enabled her to get a teaching job, because she had criminal charges pending against her in Louisiana. Ultimately, she did obtain a Colorado teacher's certificate in September

3

of 2010. According to Ms. Seaman, she has applied for numerous teaching jobs in Colorado since 2009, but "through no fault of her own[,]" she was unsuccessful in getting a job. Ms. Seaman testified that she had recently enrolled in an online course to earn her master's degree in education, which she believed would increase her chances of getting a job in Colorado.

The State offered the testimony of Elaine Hicks, Director of the District Attorney's Child Support Department in the Tenth Judicial District. Ms. Hicks testified that the parties' child support obligations were calculated using a gross monthly income of $15,139.86 for Mr. Seaman, and the earning potential of a teacher in Louisiana for Ms. Seaman based upon her education level. Statistics from Louisiana's Department of Labor were used to ascertain that the average monthly income of Ms. Seaman, were she employed in Louisiana as a teacher, would be $3,425.00.

Considering the record before us, we find sufficient evidence supportive of the trial court's determination that Ms. Seaman is voluntarily unemployed or underemployed. Ms. Seaman offered only her own testimony and no competent, documentary or other corroborating evidence to support her assertion that she is not voluntarily unemployed or underemployed through no fault or neglect of her own. Considering this was a factual determination and credibility call by the trial court, we find no manifest error in the trial court's ruling that Ms. Seaman is voluntarily unemployed or underemployed nor its determination of her income earning potential as authorized by La.R.S. 9:315.11. Ms. Seaman's assignment of trial court error is without merit.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Defendant/Appellant, Sonya R. Seaman, is to bear all costs of this appeal.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1366

STATE OF LOUISIANA
DEPT. OF CHILDREN AND FAMILY SERVICES
CHILD SUPPORT ENFORCEMENT

VERSUS

SONYA Y. SEAMAN

PETERS, J., dissenting.

I respectfully disagree with the majority's affirmation of the trial court's judgment ordering Mrs. Seaman to pay a $756.00 monthly child support obligation. I find that not only is the evidence insufficient to establish that Mrs. Seaman was underemployed, it is also insufficient to establish Mr. Seaman's income for child support purposes.

### *Issue of Voluntary Underemployment*

In this case, the record establishes that Mrs. Seaman has a Bachelor of Arts degree in Elementary Education, having graduated from Northwestern State University in 1991. She taught until 1997, when she left the profession to marry Mr. Seaman, a practicing Natchitoches, Louisiana lawyer. From that time until the parties separated, her only employment was in her husband's law office or in his various business investments.

As pointed out by the majority, La.R.S. 9:315(C)(5) provides that "[a] party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results *through no fault or neglect of the party*." (Emphasis added). Additionally, the burden of proving underemployment lies with the party

claiming that fact—in this case the state.[1] *See Arrington v. Arrington*, 41,012 (La.App. 2 Cir. 4/26/06), 930 So.2d 1068.

The state's evidence concerning Mrs. Seaman's unemployment status consists entirely of the testimony of Ms. Hicks, who could only testify that Mrs. Seaman informed her in a telephone conversation of her problems in obtaining a teaching position in Colorado, and that she followed up that conversation with a telephone call to the Eagle County School District (the county where Mrs. Seaman was then residing). With regard to that conversation, Ms. Hicks testified only that she obtained information concerning the pay scale of a Colorado teacher.[2] Additionally, Ms. Hicks based all of her income assertions on Mrs. Seaman obtaining employment in the Shreveport, Louisiana area. However, the state presented no evidence to suggest that a position would be available for a teacher who had been out of the classroom for fourteen years, nor did it establish the Mrs. Seaman had maintained her certification in Louisiana such that she would even qualify for a teaching position.

The uncontested evidence, concerning Mrs. Seaman's efforts in obtaining employment after leaving Louisiana, is that she worked numerous jobs and appears to have seldom been unemployed. She made every effort to find a teaching position in Colorado, but was denied certification because she had a pending felony charge in Louisiana which arose from the contentious divorce proceedings.[3] When that charge was finally dismissed, she did obtain a Colorado teaching

---

[1]The majority suggests that Mrs. Seaman has the burden of proof.

[2]It is difficult to believe that Ms. Hicks made no inquiries concerning employment opportunities in Colorado since Mrs. Seaman's employment opportunities is the basic issue in this litigation. However, she did not share that information with the trial court.

[3]Mrs. Seaman presented evidence of twenty-five applications for teaching positions in Colorado.

2

certificate, and, at the time of trial of this matter, was enrolled in online courses to earn a master's degree in education and better increase her chances of obtaining a teaching position in Colorado. She only obtained her Colorado teaching certificate in September of 2010. Obviously, by that time the 2010-11 school year had begun and teacher quotas were filled. Trial on this matter was held before the 2011-12 opportunities arose for her.

In my opinion, the state never met its burden of proving that Mrs. Seaman was voluntarily underemployed. In fact, the evidence clearly established that Mrs. Seaman was underemployed through no fault or neglect of her own. La.R.S. 9:315(C)(5). To conclude otherwise would be to conclude that although Mrs. Seaman worked long hours at menial jobs averaging $10.00 per hour, she did so to avoid the increase in child support payments that would be effected by her taking a teaching position. "Voluntary unemployment or underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse." *Martello v. Martello*, 06-594, p. 13 (La.App. 1 Cir. 3/23/07), 960 So.2d 186, 197. I find nothing to suggest that Mrs. Seaman's situation was based on anything other than her good faith in attempting to find suitable employment. Furthermore, there is no Louisiana law requiring Mrs. Seaman to more from her resident state to another state in order to seek employment. *See Lauve v. Lauve*, 08-76 (La.App. 4 Cir. 8/20/08), 6 So.3d 184. The trial court should have evaluated Mrs. Seaman's child support obligation based on a $10.00 per hour income.

### *Issue of Mr. Seaman's Income for Support Purposes*

Next, the trial court erred in setting Mr. Seaman's monthly income for child support purposes based solely on the state's assertion of the content of part of his 2010 Federal tax return. Mr. Seaman testified that he suffered substantial business

losses in 2008 and 2009, and that he anticipated a significant loss when he sold certain Montana property later in 2011. Given the fact that Mr. Seaman was still involved in business ventures outside his law practice in 2010, it stands to reason that the 2010 Federal tax return would address that financial involvement.

Despite the fact that his continuing business activity outside the practice of law clearly affected the amount available for child support, the state's counsel made statements throughout the proceedings concerning his interpretation of Mr. Seaman's tax returns. In the most significant of these statements to the trial court, he suggested that "in [his] opinion" only one portion of the 2010 Federal tax return should be considered in setting the child support because everything else was irrelevant. That portion of the 2010 Federal tax return involved only the income derived by Mr. Seaman from his law practice. The state's counsel initially set Mr. Seaman's income at $11,840.00 per month[4]—an amount significantly better than the resulting income from the 2008 and 2009 Federal tax returns. The trial court accepted counsel's assertion as evidence in ultimately setting the amount of support due from Mrs. Seaman.

What makes the use of the 2010 Federal tax return, as evidence of Mr. Seaman's financial situation for child support purposes, unsupportable is that not only did Mrs. Seaman not have a copy of the return, but she was denied access to the return during trial. When the state's counsel made his assertions to the trial court, Mrs. Seaman requested a copy to review. The state's counsel refused to provide her a copy citing some unspecified federal prohibition against sharing the information. Mr. Seaman expressed his agreement with the state's position, and

---

[4]Counsel for the state had to later modify this amount by increasing it to $15,138.83 when Ms. Hicks pointed out to him that Mr. Seaman was also receiving social security benefits for himself and the two children.

when Mrs. Seaman requested that the trial court allow her a copy, the trial court responded that it denied her request. Thus, a portion of her former husband's 2010 Federal tax return was used against Mrs. Seaman, not through Mr. Seaman's testimony, but through assertions made by the state's counsel that nothing else contained in the return was relevant to the proceedings before the trial court.

The importance of Mrs. Seaman's inability to present any sort of a defense to the content of the tax return was highlighted by Ms. Hicks' comments to the state's counsel to the effect that the return also reflected Mr. Seaman's receipt of social security benefits for himself and the two children in 2010—something that the state's counsel had overlooked or had determined to be irrelevant.[5]

This error was compounded when Ms. Hicks attempted to recalculate the worksheet using this information. She used the social security information to increase Mr. Seaman's monthly income from $11,839.85 to $15,138.83. This had the effect of increasing the total child support obligation from $3,856.47 to $4,097.64 and of decreasing Mrs. Seaman's obligation from $865.39 to $756.00. The problem is that while she increased the monthly income by the amount Mr. Seaman received for himself in social security benefits, she did not decrease the combined support obligation by the amount Mr. Seaman was receiving for that very purpose. Assuming everything else to be correct, that amount should have been reduced by over $1,000.00. Also, with regard to the worksheet, in her testimony Ms. Hicks also volunteered that Mr. Seaman was paying $413.65 in health insurance benefits and $811.25 so that the children could attend a private

---

[5]It is significant to note that while the state refused to provide Mrs. Seaman with a copy of her former husband's 2010 Federal tax return, one of the items of evidence sought by the state in its original pleading was Mrs. Seaman's 2010 Federal tax return.

school.[6] There was no evidence from Mr. Seaman that he paid these amounts, but more important, there was no evidence presented of a special need for private school attendance. *See State, Dep't of Social Services v. Swords*, 08-580 (La.App. 3 Cir. 11/5/08), 996 So.2d 1267.

### *Other Issues*

Although I believe the matter should be reversed and remanded on the two primary issues previously discussed, there are other issues that require attention by the trial court on remand. It is obvious that the matter before us overlaps with the civil litigation which apparently is still going on between Mr. and Mrs. Seaman. Although the state filed a separate action to set child support, it did so by rule to show cause rather than petition. This resulted in the trial court falling into error in setting the effective date of child support payments. The state did not file its action until March 29, 2010, and trial on the rule was held June 20, 2011, Still, the trial court made its support judgment retroactive to October of 2010. This was error. Additionally, October of 2010 is apparently the date the civil pleadings first addressed the support issue and certainly raises *lis pendens* issues.

The importance of requiring the state to prove its claims against Mrs. Seaman is found in the enabling statute authorizing the state's cause of action in matters similar to the one now before us. In its initial pleading, the state asserted that it was seeking the setting of a child support obligation as well as an income assignment order under La.R.S. 46:236.3. As described in the provisions of law that follow that statute in Title 46 of the Revised Statutes, the obligations imposed on Mrs. Seaman after judgment are much more severe than in the civil process, and border on quasi-criminal penalties.

---

[6]Although Mr. Seaman testified concerning some discovery issues, he did not testify concerning his financial situation.

I would reverse the entire judgment and remand it for a hearing wherein the parties could present competent evidence upon which the trial court could rule.